## Dieffenderfer *versus* Fisher.

1. A demand of appraisement and exemption under the act of 1849 should
be made at the time of the levy, but may be made afterwards if not at so
late a time as to postpone the sale.

2. When the debtor is at hand at the time of the levy, or in circumstances
reasonably convenient for the purpose, he is bound to demand the appraise-
ment before the plaintiff is put to the cost of any further proceeding.

3. If debtors see their property levied on and advertised without claiming
the exemption they elect to waive it, and the sheriff or constable may disre-
gard a demand coming so late as half an hour before the sale.

4. When a debtor at the time of levy alleges the property levied upon to be
the property of another, he cannot afterwards claim it and demand an ap-
praisement and exemption.

5. A conveyance or transfer of property in fraud of creditors estops the
debtor from demanding $300 of it, or of its proceeds.

6. A bachelor debtor may have the benefit of the exemption law of 1849.

ERROR to the Court of Common Pleas of *Union County.*

Trespass against a constable for refusing to appraise pro-
perty under the act of 1849. The opinion of the court con-
taining a full statement of the facts was delivered October 20th,
1859, by

[Dieffenderfer *v.* Fisher.]

WOODWARD, J.—A young man, unmarried and without family, owing a debt of $24 24, compels his creditor to obtain judgment, to take execution and to levy on a colt which the debtor protested with profane emphasis belonged to his father, and not himself.

For near a week that the sale was advertised, no appraisement was demanded under the exemption law of 1849, though the debtor and the constable dwelt in the same little village about one hundred yards apart, but on the day of the sale, within half an hour of its commencement, according to some witnesses, and after the bidding had actually begun, according to other witnesses, the debtor changed his mind concerning the ownership of the colt, and demanded that it be appraised as his property. The constable, indemnified by the plaintiff, disregarded the demand, went on, and sold the colt for $65, and for this trespass this suit was brought and damages recovered.

Such is this case, and the judgment rendered is altogether wrong. If we assume what, under the instruction and verdict, must be assumed, that the appraisement was demanded a little before the bidding actually commenced, it was, nevertheless, under the circumstance, demanded too late. The statute does not in terms fix the time when the demand shall be made, but in *Hammer* v. *Freese*, 7 H. 257, it was said that regularly the demand should be made at the time of the levy, though it may be made afterwards if it be not so late as to postpone the sale. In *Rogers* v. *Waterman*, 1 Casey, 184, the fact that the debtor lived twenty miles away from the place where the levy and sale were made, was not considered a sufficient excuse for delaying to demand appraisement until the sale had begun.

In *Bowyer's Appeal*, 9 H. 213, it was held in respect to a levy on real estate that the debtor must elect to request an appraisement before inquisition, and where no inquisition is required he must elect before the plaintiff has incurred the expense of advertising.

These cases indicate the true construction of the statute to be that where the debtor is at hand at the time of the levy, or in circumstances reasonably convenient for the purpose, he is bound to demand the appraisement before the plaintiff is put to the costs of any further proceeding, and this rule is peculiarly proper in a case like this when the whole levy was sure to be appraised at less than $300, and when, of course, an appraisement demanded would have obviated the necessity of indemnifying the constable and advertising the sale. But the defendant was willing to put the plaintiff to all possible trouble and expense, and yet deny him the fruit of his execution.

The statute was not made to hinder and harass creditors, but to save honest debtors who demand an appraisement in

time, of $300 worth of their estate. If, however, they see their property levied on and advertised without claiming the statutory boon, they elect to waive it, and the sheriff or constable may disregard a demand coming so late as half an hour before the sale. There is another reason why the constable was not bound to notice the demand in the case. From the time of the levy down to the time of the sale Fisher had denied his ownership, and alleged that the colt belonged to his father. The allegation was either true or false. If true, he was not entitled to an appraisement of another man's goods, and the constable and creditor had a right to proceed, at their peril to be sure, but answerable, not to him, but to his father. If the allegation was false, if the colt was indeed Fisher's own property, then he was a covinous debtor, seeking to cloak his property from his creditors, and therefore not entitled to the benefits of a statute made for honest debtors. We held in *Huey's Appeal*, 5 Casey, 220, that a conveyance of real estate in fraud of creditors estops a debtor from demanding $300 of the proceeds of a sheriff's sale—a principle which applies itself with equal force to transfers of personal property in fraud of creditors.

What is a sheriff or constable to do when a debtor solemnly denies his ownership of goods seized in execution, and then at the sale demands an appraisement of them as *his property?* The officer has no means of determining questions of title, and it is not his duty. The plaintiff has a right to try the title, which he can only do by a sale, and when he indemnifies the officer and takes the risk of the proceeding, he is not to be baulked by such a shuffle as was attempted here. The statute was not made to be used in this manner. For these reasons we think the court ought to have directed a verdict for the defendant.

There are some other points in the case scarcely worthy of notice. A bachelor debtor may have the benefit of the exemption law, though it is generally spoken of as intended for a debtor's family.

There is nothing in the objection to the form of the action. In those counties where there is a standing agreement of the counsel or a rule of court for the trial of appeals from justice on their merits without pleadings, we will not reverse for such discrepancies of form as appear on this case.

The judgment reversed and a *venire facias de novo* is awarded.