APPEAL OF JOHN IMHOFF.

[WILLIAM E. MILLER v. JOHN IMHOFF.]

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY.

Argued March 5, 1888—Decided March 19, 1888.

1. An appraisement under the exemption law, setting apart personalty to the debtor for a portion of the exemption allowed and finding that the real estate cannot be so divided as to give the debtor the residue in land, is not in the nature of a conclusive adjudication seating the claim either upon the land or upon the fund realized from the sale thereof.

2. A debtor, who by falsehood and deception succeeds in concealing and withdrawing his personal property from the grasp of an execution, forfeits his right to claim the benefit of the exemption law out of the proceeds of the sale of his real estate.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 89 July Term 1887, Sup. Ct.; court below, Vend. Ex. No. 13 August Term 1886, C. P.

On August 9, 1886, certain real estate of John Imhoff having been sold at sheriff's sale under a venditioni exponas issued from a judgment against him in favor of Wm. E. Miller, upon the petition of the latter, setting forth that he was a lien creditor and had purchased the property sold and that the defendant claimed out of the proceeds the sum of $285.15 on account of his right under the exemption law; that personal effects belonging to the defendant out of which the exemption might have been obtained had been fraudulently concealed and then removed from the state by him to hinder a levy upon them under a fieri facias issued, $400 of the purchase money was ordered into court and an auditor appointed to distribute the fund according to law.

On February 21, 1887, the auditor, *Mr. J. G. Diefenderfer*, made a report finding as matters of fact, in substance, that upon a fieri facias first issued upon the judgment an appraisement had been held under a claim by the defendant for the

.Arguments.

benefit of the exemption law, and personal goods to the value of $14.85 set apart to him on account thereof, all the other goods levied upon being claimed by the defendant's wife as her own property; that subsequently an alias fieri facias was issued, and when the sheriff was about to levy upon the goods not previously set apart, the object of the writ being to test the title of the wife to them by an interpleader applied for the day the writ issued, the defendant falsely informed the sheriff that the goods had been shipped to New York; that a levy having been made upon the real estate of the defendant, appraisers appointed under his demand for the residue of his exemption reported that the property levied upon could not be divided so as to give the defendant his claim in land; that before the sheriff's sale the defendant had assigned a part of his exemption claim, to wit, the sum of $107, to Geo. W. Rhoad, not a judgment creditor, to give him priority over lien creditors. As matter of law, the auditor, citing Gilleland v. Rhoads, 34 Pa. 190; Strouse v. Becker, 38 Pa. 192; Freeman v. Smith, 30 Pa. 264; Emerson v. Smith, 51 Pa. 90; McCarthy's Appeal, 68 Pa. 217, and Bowyer's App., 21 Pa. 214, under his findings of fact more fully appearing in the opinion of this court, denied the right of the defendant to receive the sum of $285.15, claimed as the balance due him under his exemption, and reported a distribution awarding the fund in court to the lien creditors.

On April 11, 1887, exceptions by the defendant in the judgment to this report were dismissed by the court, SCHUYLER, P. J., the report confirmed and a decree made in accordance therewith. Thereupon the defendant took this appeal, assigning the decree as error.

*Mr. Robert L. Cope* (with him *Mr. W. C. Loos*), for the appellant:

1. The auditor found as facts that, for the deficiency of the exemption claim, a demand was made upon the real estate, and an appraisement followed certifying that the real estate was worth more than the balance claimed and that it could not be divided, which appraisement was returned with the writ, no question raised as to its regularity, a condemnation had and a sale upon a venditioni exponas; all this appeared

of record. These facts, under the act of April 9, 1849, P. L. 533, gave to the defendant the right to receive out of the proceeds of sale, "so much as he would have received at its appraised value, had the said real estate been divided." The law vests the title to such proceeds: Sipes v. Mann, 39 Pa. 414; McAfoose's App., 32 Pa. 276; Ehrisman v. Roberts, 68 Pa. 308. The acts of April 9, 1849 and April 14, 1851, P. L. 613, are in pari materia, and to be construed with reference to each other: Hufman's App., 81 Pa. 329. Under the latter act, it has been held that the record of an appraisement confirmed is a matter of record, possessing the effect of a judgment, open to no collateral attack: Sellers's Est., 82 Pa. 153; Runyan's App., 27 Pa. 121.

2. The writ of venditioni exponas is in legal contemplation issued by the court itself, and liberty to sue it out may be regarded as evidence of the court's approval of the inquisition: Crawford v. Boyer, 14 Pa. 380. If it be regarded as an approval of the inquisition, will it not also be regarded as an approval of the appraisement and everything done under the prior writ? If the sheriff disallow the exemption and refuse an appraisement, the court cannot award the debtor any of the proceeds of sale: Marks's App., 34 Pa. 36; Freeman v. Smith, 30 Pa. 264. If the sheriff allow it and make the appraisement, and no exceptions are taken, can the court deny to the debtor the benefit of the act?

3. When in a common law or statutory proceeding an attack is made under an allegation of fraud, fraud should not be found by the court except on the verdict of a jury: Humphreys v. Rawn, 8 W. 80; Dyott's Est., 2 W. & S. 557; Tasker v. Sheldon, 115 Pa. 107; Bruner's App., 47 Pa. 67. Can an auditor do more than the court itself? So, if the proceedings allowing exemption are all regular, the auditor has no power to inquire into the fraudulent conduct of the defendant and upon a finding of fraud disallow the claim: Thompson's App., 57 Pa. 175; Edwards's App., 66 Pa. 89; Borland's App., Idem 470; Bank's App., 85 Pa. 528; Logue's App., 22 Pa. 50.

*Mr. W. E. Doster* (with him *Mr. P. M. Gernet*), for the appellee:

The burden of the appellant's argument is, not to show that

he is innocent of the fraud charged and found against him, but that he is securely intrenched behind the appraisement returned, which no auditor and no court could thereafter inquire into.

It might be enough to say with the court below, that none of the authorities establish such a doctrine. But we go further, and say that this very argument as to the effect of an appraisement upon a claim by a dishonest debtor has been made before and exploded: Gilleland v. Rhoads, 34 Pa. 189; Strouse v. Becker, 38 Pa. 190; Huey's App., 29 Pa. 219; Mahler's App. 38 Pa. 221.

OPINION, MR. JUSTICE STERRETT:

The fund in court, part proceeds of appellant's real estate sold on appellee's execution, was claimed by the latter, whose right thereto was undisputed save by appellant, who claimed $285.15 thereof, as the residue payable to him under the exemption law, the benefit of which he had previously claimed when the fieri facias on appellee's judgment was in the sheriff's hands. Under the claim then made, the personal property levied on was appraised at $14.85 and set apart to appellant. With the view of making up the deficiency of $285.15, the appraisers went upon the real estate, from the sale of which the fund for distribution was realized, and found it could not be divided so as to give appellant a portion thereof sufficient in value to cover said deficiency.

With the exception of the articles appraised and set apart to appellant, as above stated, all the rest of the personal property, then upon his premises, consisting of a variety of household furniture, etc. was claimed by his wife with his knowledge and consent. Shortly afterwards, an alias fieri facias was issued and served by the sheriff, who then informed appellant that the purpose was to levy on the property claimed by his wife, and test her title thereto by an interpleader issue. Appellant thereupon deceived and misled the sheriff by falsely alleging that all the property referred to had been shipped to New York and that he had no goods in the county. The sheriff being thus prevented from levying on the goods returned the writ, nulla bona.

The property, thus fraudulently withdrawn from the grasp of appellee's execution, included a bill of goods amounting to

$98.90 and a cooking stove, value not stated, both of which were purchased on credit by appellant himself, the former from Mr. Rodgers and the latter from Mr. Bitting, together with other articles the value of which is not found.

The foregoing facts are all substantially included in the findings of the learned auditor; and, in addition thereto, he has specially found that the false denial of ownership of the goods in question by appellant, through his wife, in consequence of which they were not appraised to him under his exemption, falsely increased his claim upon the fund realized from the real estate, to the extent of the value of said goods, including those purchased from Rodgers and Bitting respectively; that appellant by his acts hindered and delayed appellee in the collection of his judgment, and also that appellant assigned $107 of his exemption claim "to George W. Rhoad, not a judgment creditor, for the purpose of giving him priority over judgment creditors of record." The question is, whether upon the foregoing facts appellant is entitled, as against appellee, to take out of the fund in court the residue of his $300 exemption? We think not, unless it can be made to appear that a dishonest debtor should be rewarded at the expense of the creditor whom he successfully undertook to cheat. As we understand the exemption law, it was not made for that class of debtors.

The action of the appraisers in setting apart personal property to amount of $14.85, and finding that the real estate could not be divided so as to give appellant the residue of his exemption claim in land, was not in the nature of an absolute and conclusive adjudication that he was or would be entitled to the residue in money out of the proceeds of the real estate when sold, without regard to what he might do in the meantime; in other words, it did not seat his claim either upon the land or upon the fund realized from the sale thereof. Non constat, that the land would ever be sold, or that appellant might not thereafter waive or forfeit his right to claim the residue out of the proceeds of the land or anything else, if he had not already done so. The finding merely put him in a position to present his claim upon the fund, so that it might be awarded to him, provided it appeared, to the auditor or court distributing the same, that he was legally entitled thereto. If he

had acted the part of an honest debtor, when the sheriff attempted· to levy on the property falsely alleged to belong to his wife, etc., his claim to the residue of the $300 could not have been gainsaid, but, according to the finding of the auditor, he did not do so. On the contrary, by falsehood and deception he succeeded in concealing and withdrawing from the grasp of appellee's alias execution personal property, which for aught that appears to the contrary, may have been worth more than the amount now claimed out of the fund. The articles which he purchased from Mr. Rodgers alone amounted to $98.90. How much the stove and all the other articles were worth, does not appear. If he thought he had not succeeded in concealing and then shipping out of the state goods equal in value to the amount he now claims, and that there was therefore, on the whole transaction, a small margin in his favor, the least he could have done was to show the fact. In the absence of any offer to do so, the presumptions are all against him.

But, no such question is or can be involved in the case. Upon the facts found by the auditor, appellant forfeited his right to the residue of the exemption to which otherwise he would have been entitled. As already intimated, the benefits of the exemption acts are intended for unfortunate but honest debtors, not for the protection of dishonest persons. "The rule," says Mr. Justice WOODWARD, in Strouse v. Becker, 38 Pa. 190, "which denies to a dishonest debtor who shuffles and conceals his property, denies his ownership, and falsely alleges title in his wife or other relative or friend, with a view of eluding the vigilance of the officer who has an execution to levy, is founded in a sound morality, and . . . . . is agreeable to the spirit and intention of the exemption law. It was an enactment for the honest poor, not for the roguish." Authorities to the same effect are numerous. Among them are, Huey's Appeal, 29 Pa. 219; Freeman v. Smith, 30 Pa. 265; Emerson v. Smith, 51 Pa. 90; Gilleland v. Rhoads, 34 Pa. 187. In Strouse's Exr. v. Becker, supra, it is also said: "It is the duty of the debtor, as a good citizen, if he cannot pay the debt, to facilitate the making the levy. He should exhibit his property honestly, and claim only the exemption which the law allows him. It is a hard thing doubtless to

be strictly honest in such an emergency, but it is best, after all, even for the debtor himself. If his property be taken, his self-respect and conscious integrity are left, and he has gained a moral discipline which will go far towards repairing his fortunes. But, if he equivocate and dissemble, denies the ownership of that which he cannot hide, and embarrasses the officer of the law in the execution of his duties, he forfeits not only his self-respect but his hold upon the exemption provided for honest debtors."

Neither of the specifications of error is sustained.

                Decree affirmed and appeal dismissed at the costs of appellant.